UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA PINKERTON, individually and on behalf of all others similarly situated, | ) ) ) ) | CASE NO. 5:18-cv-1371 |
| PLAINTIFFS, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | MEMORANDUM OPINION |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions: the motion of defendant GEICO Choice Insurance Company ("GEICO") to dismiss the complaint (Doc. No. 9 ["GEICO Mot."]), and the motion to dismiss filed by defendant Government Employees Insurance Company ("Government") (Doc. No. 10 ["Government Mot."]). The motions are opposed and fully briefed. (Doc. No. 14 ["GEICO Opp'n"]; Doc. No. 16 ["GEICO Reply"]; Doc. No. 15 ["Government Opp'n"]; Doc. No. 17 ["Government Reply"].) For the reasons discussed herein, GEICO's motion to dismiss is granted, and Government's motion is denied as moot.

I. **BACKGROUND**

All disputed facts are taken from the allegations in the complaint and, for consideration of the present dispositive motions, are presumed to be true. GEICO is in the business of selling and underwriting insurance policies. (Doc. No. 1 (Complaint ["Compl."]) ¶ 1.) GEICO offers automobile insurance policies that contain various coverages and various "coverage limits, including bodily injury liability, property damage, uninsured motorist ['UM'] coverage and

underinsured motorist ['UIM'] coverage." (*Id*. ¶ 9.) GEICO is the wholly owned subsidiary of Government. (*Id*. ¶ 26.)

The parties agree that Ohio law requires that all drivers maintain minimum bodily injury liability coverage of $25,000 per person and $50,000 per occurrence. (GEICO Mot. at 66,[1] citing Compl. ¶ 18; Ohio Rev. Code § 4509.20.) It is equally well settled that Ohio law does not require any minimum UIM coverage limits. Ohio Rev. Code § 3937.18(A) (providing that an automobile insurance policy "may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages").

In 2018, plaintiff Sandra Pinkerton ("Pinkerton") purchased an automobile insurance policy (the "Policy") from GEICO. (*Id*. ¶ 6.) She alleges that she purchased the Policy in response to an email advertisement promising a "savings estimate." (*Id*. ¶ 7.) She alleges, generally, that she "relied on the guidance and advice of [GEICO], a sophisticated insurance corporation in selecting appropriate coverage limits[.]" (*Id*. ¶ 10.) She further alleges that she was advised as to "state minimum coverage limits" and that she received advice on selecting the appropriate coverage. (*Id*. ¶ 11.)

The insurance ultimately selected by Pinkerton provided for $25,000 of coverage for each person for property damages and bodily injury, and a $50,000 bodily injury limit for each occurrence. (Doc. No. 9-2 (the Policy), Declaration Page, at 92.) The Policy further provided UM and UIM coverage with limits of $12,000 per person and $25,000 per occurrence. (*Id*.; Compl. ¶ 13.) The premium for UIM coverage was $6.89 every six months for each of the

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

2

vehicles covered by the Policy. (*See* Policy at 92.) Prior to filing the present lawsuit, Pinkerton had never filed a claim with GEICO for UIM benefits.

On June 18, 2018, Pinkerton, on behalf of herself and all others similarly situated, filed a six-count complaint in federal court, on the basis of diversity, alleging breach of contract, fraud and misrepresentation, conversion, breach of fiduciary duty, negligence, and unjust enrichment.[2] Pinkerton asserts that the UIM coverage offered in the Policy is a "nullity" because the UIM Policy limits of $12,000 per person and $25,000 per occurrence are less than the Ohio minimum bodily injury liability limits of $25,000 per person and $50,000 per occurrence. (Compl. ¶¶ 19–24.) According to Pinkerton, she could never make a claim for UIM coverage under the Policy because a driver could not maintain less than $25,000 in insurance in Ohio. (*Id.* at ¶ 23.) She complains that she has been injured by expending funds on coverage that is "void as a matter of law, useless in practice or operation, [and] provides no coverage against an underinsured driver[.]" (*Id.* ¶ 47.)

## II. STANDARD OF REVIEW

GEICO and Government bring their dispositive motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the nonmoving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court,

---

[2] Pinkerton asserts claims on behalf of two classes: a nationwide class of all persons in the United States who were sold policies with UIM coverage below their state's minimum liability coverage limits, and a subclass of Ohio residents who purchased the same coverage. (*Id.* ¶ 33.)

however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874–75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint[]"); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[]").

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss under Rule 12(b)(6), the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for

summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Comm. Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

While the Policy is not appended to the complaint, it is central to the claims contained therein. Accordingly, the Court may take judicial notice of the Policy without converting the Rule 12(b)(6) motions into ones for summary judgment. *Comm. Money Ctr.*, 508 F.3d at 335–36.

### III. DISCUSSION

In its dispositive motion, GEICO argues that Pinkerton lacks standing to bring this action, and that, in any event, each of her claims fails to state a cause of action. Government insists that it is entitled to dismissal because the complaint also fails to set forth factual allegations that would demonstrate that it is liable for damages allegedly caused by its subsidiary, GEICO.

**A. Standing**

As a threshold matter, GEICO challenges Pinkerton's standing to bring the present action. Noting that Pinkerton has not alleged that she has ever made a claim for and was denied UIM coverage under the Policy, GEICO urges a finding that Pinkerton cannot establish a "current, concrete injury[.]" (GEICO Mot. at 69.) To meet the minimum constitutional standard

for individual standing in federal court, a litigant must show, among other things, an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (quotation marks omitted); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Additionally, Ohio law requires a controversy to be "grounded on a present dispute, not on a possible future dispute." *Kincaid v. Erie Ins. Co.*, 944 N.E.2d 207, 211 (Ohio 2010); *see also Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009) ("When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action.").

Relying on *Kincaid*, GEICO maintains that Pinkerton cannot demonstrate a justiciable injury grounded in a present dispute. (GEICO Mot. at 69–70.) In *Kincaid*, the Ohio Supreme Court held that an insured had failed to demonstrate a "present dispute" against his insurer, and as such lacked standing, where the insurer had not yet refused to pay a claim for certain expenses under a motor vehicle policy. *Kincaid*, 944 N.E.2d at 211. GEICO argues that by failing to first file a claim for UIM benefits, Pinkerton is seeking an impermissible advisory opinion on the availability of benefits. (GEICO Mot. at 69.)

But *Kincaid* is readily distinguishable on the facts because Pinkerton, unlike the insured in *Kincaid*, is alleging that the insurance contract is illusory. It is Pinkerton's position that, by its construction and express language, the Policy does not allow for a UIM claim. She maintains, therefore, that she was "damaged the moment she first paid for illusory coverage." (GEICO Opp'n at 180.) Courts have found standing where insureds have alleged that they paid for

6

illusory or void coverage. *See, e.g., Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 576–77 (2d Cir. 2018) (finding standing for claim that non-compliance with state law rendered an insurance contract void *ab initio*); *Graham v. Catamaran Health Sols. LLC*, No. 16-1161, 2017 WL 3613328, at *4 (8th Cir. Aug. 23, 2017) (noting that "if the policy is deemed void *ab initio* due to non-compliance with state law, then [plaintiff] will have suffered a compensable economic injury fairly traceable to the defendants' actions"); *Carton v. B&B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1245 (D. Nev. 2011) (noting that "[b]ecause the [i]nsurers continue to hold premium payments provided by the [insureds] for policies which were never valid, the [insureds] have suffered an injury in fact and have standing to bring this suit[]").

GEICO insists that any standing argument premised on the illusory nature of the UIM coverage at issue must fail because the Policy is not illusory. While the Court ultimately agrees that the Policy is not illusory, GEICO's standing argument overshoots the mark. The threshold standing inquiry does not depend on the merits of the claim. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989); *see Dubuisson*, 887 F.3d at 576 ("Standing analysis does not permit consideration of the actual merits of a plaintiff's claim.") (quoting *Graham*, 2017 WL 3613328, at *4). Rather, a "standing analysis . . . permits cursory examination of a plaintiff's legal theories only to the extent necessary to understand what is asserted, whether the plaintiff has properly *alleged* an injury that is fairly traceable to the named defendants, and whether that injury can be redressed by a judgment against those defendants." *Graham*, 2017 WL 3613328, at *4.

Pinkerton has alleged the payment of premiums for illusory insurance coverage. She has, therefore, alleged a concrete and particularized harm resulting from a present dispute and has

standing under federal and state law to the bring the present lawsuit. *See, e.g., Dubuisson*, 887 F.3d at 576.

B.   **Negligence Claims**

Even though Pinkerton has standing to bring her claims, the Court must still determine whether the claims survive a Rule 12(b)(6) analysis. GEICO argues that the asserted tort claims fail because they merely represent an attempt to repackage the breach of contract claim as a tort action. (GEICO Mot. at 79.) "[U]nder Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Nichols v. Chicago Title Ins. Co.*, 669 N.E.2d 323, 332 (Ohio Ct. App. 1995) (quotation marks and citation omitted). "Where the duties imposed upon the parties are governed by contract, then contract law governs the recovery." *Clevenger v. Dillard's Dep't Stores, Inc.*, No. 1:02-cv-558, 2007 WL 2902933, at *27 (S.D. Ohio Oct. 2, 2007). However, when an alleged breach is a duty that is created by a contract and is "independent of any duty imposed by law, the cause of action is one of contract, not tort." *Cuthbert v. Trucklease Corp.*, No. 03AP-662, 2004 WL 1879023, at *10 (Ohio Ct. App. Aug. 24, 2004). Where the causes of action in tort and contract are "factually intertwined," a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract. *Id.*

Here, the parties' relationship is contractual and, at least with respect to Pinkerton's simple negligence claim (Count 5), she has not pled any duties and responsibilities separate and apart from the obligations set forth in the contract. *See Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 210 (Ohio 2001); *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984) (recognizing that "[i]t is a long-standing principle of law that an insurance policy is a

8

contract, and that the relationship between the insurer and the insured is purely contractual in nature"). Pinkerton's negligence claim necessarily fails as a matter of law.

## C. Fraud Claim

In Count 2, entitled "Fraud and Misrepresentation," Pinkerton alleges generally that defendants concealed the fact that the UIM coverage in the Policy was void as a matter of law, and that they affirmatively represented that "the UIM coverage that [Pinkerton] was purchasing would provide coverage in the event [Pinkerton] was damaged by an underinsured driver." (Compl. ¶¶ 54, 55.) She further alleges that she relied upon these "material" representations and/or omissions, as well as representations "about the coverage limits, nature, and quality of the UIM coverage [defendants] were selling" in purchasing what she alleges is worthless UIM insurance. (*Id*. ¶¶ 57, 59, 60, 61.)

Pursuant to Fed. R. Civ. P. 9(b), a claim for fraud must be pled with particularity. *Frank v. Dana Corp*., 547 F.3d 564, 569–70 (6th Cir. 2008). To satisfy the heightened pleading requirements of Rule 9(b), a fraud complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. At a minimum, [the complaint] must allege the time, place and contents of the misrepresentations upon which [the plaintiffs] relied." *Id*. (internal citation omitted).

Pinkerton's vague allegations of general topics of discussion with unidentified individuals at undisclosed times fail to satisfy Rule 9(b)'s heightened pleading requirements. Moreover, generalized allegations that defendants represented that the Policy would provide coverage or had "value" are opinions that are not actionable under Ohio law. *Ind. Ins. Co. v.*

9

*Midwest Maint., Inc.*, 174 F. Supp. 2d 678, 681 (S.D. Ohio 2001) ("Under Ohio law, a party's opinion on the issue of coverage has been found unactionable in fraud."); *see Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 742 (S.D. Ohio 2009). GEICO 's motion to dismiss Pinkerton's fraud and/or intentional misrepresentation claim is GRANTED.

To the extent that Count 2 or Count 5 also purports to assert a claim for negligent misrepresentation, they likewise fall short.[3] Unlike its intentional cousin, a claim of negligent misrepresentation cannot be based on omissions. Instead, it must be supported by an affirmative false statement. *See Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir. 2003); *Leal v. Holtvogt*, 702 N.E.2d 1246, 1261 (Ohio Ct. App. 1998); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1269 (Ohio Ct. App. 1996).

Pinkerton cites *Abboud v. Liberty Mut. Ins. Grp., Inc.*, 711 F. App'x 773 (6th Cir. 2017) in support of her clam. In *Abboud*, the insured specifically asked his insurance agent whether an umbrella insurance policy would extend his automobile insurance limits and was told that it would, when in fact, the insurer later determined that the policy did not extend coverage. *Id*. at 778. The insured suffered a loss directly relating to the promised coverage, and, under these facts, the Sixth Circuit determined that there was an issue of fact as to whether the insurer's agent made a negligent misrepresentation. *Id*. at 779.

The present case is distinguishable from *Abboud* in that Pinkerton fails to allege any

---

[3] Count 2 appears to be pled as a fraud/intentional misrepresentation claim, with specific allegations that the alleged misrepresentations were intentional. (Compl. ¶ 58.) In contrast, Count 5 is pled as a simple negligence claim, with absolutely no reference to any material representation. Nonetheless, in her opposition to GEICO's motion to dismiss, Pinkerton suggests that the allegations in Count 2 and 5, combined, set forth a claim for negligent misrepresentation. (GEICO Opp'n at 187.) Of course, the Court need not accept Pinkerton's attempt to cobble together a new cause of action in opposition to a motion to dismiss, and any such action is DISMISSED for this reason alone. *See Bandy v. Fifth Third Bank*, 519 F. App'x 900, 903 (6th Cir. 2013) ("we do not require a district court to construct a golem cause of action from spare parts it finds.")

specific, false statements. Instead, the allegations in the complaint are much more aligned with *Wright v. State Farm Fire & Cas. Co.*, 555 F. App'x 575 (6th Cir. 2014), a prior case the Sixth Circuit distinguished en route to its ruling in *Abboud*. In *Wright*, the insureds suffered damage to their roof. Their homeowner's policy only covered roof repairs, while their neighborhood association's rules required roof replacements. The insureds alleged that the insurer had misrepresented the scope of the coverage and that the policy was essentially of no use to them. But there was no evidence that the insured had specifically discussed the roof coverage with their agent. *Id*. at 578. The Sixth Circuit rejected the insureds' misrepresentation claim and held that the insurer had no duty to inform the insureds of the potential limitations on the coverage. *Id*. at 579.

The Court finds the decision in *Wright* instructive and dispositive. Pinkerton has not identified any false statements made by defendants regarding her coverage, and she has not alleged that she even discussed the availability of UIM coverage in the event that she was involved in an accident with an at-fault Ohio driver. "In Ohio, an insurance customer has a 'duty to examine the coverage provided and is charged with knowledge of the contents of his or her own insurance policies.'" *Id*. at 579–80 (quoting *Fry v. Walters & Peck Agency, Inc*., 750 N.E.2d 1194, 1200 (Ohio Ct. App. 2001)). Pinkerton "had at least a minimum duty to educate [herself] about . . . the contents of [her] insurance policy[,]" and defendants were under no duty to proactively highlight possible limitations. *Id*. at 579–80 (quoting *Slovak v. Adams*, 753 N.E.2d 910, 916 (Ohio Ct. App. 2001) ("Ordinarily, the relationship between an insured and the agent that sells the insurance is, without proof of more, an ordinary relationship, not a fiduciary one.")). GEICO's motion to dismiss Pinkerton's negligent misrepresentation claim is

GRANTED.

### D. Breach of Fiduciary Duty Claim

For many of the same reasons, Pinkerton's breach of fiduciary duty claim also fails. As set forth above, an insured and insurer generally share a contractual, and not fiduciary, relationship. *See Slovak*, 753 N.E.2d at 916. However, "[a] fiduciary relationship may be created out of an informal relationship when both parties understand that a special trust or confidence has been reposed by one party in the other." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 823 (N.D. Ohio 2006). Yet, Pinkerton has not alleged any facts that would support a finding that a special trust had been created, such that her relationship with defendants was no longer that of an insured and insurer in an arms-length contractual transaction.[4] *See Wright*, 555 F. App'x at 580; *see, e.g., Brenner v. LM Gen. Ins. Co.*, No. 5:16-cv-1117, 2017 WL 2869350, at *3 (N.D. Ohio July 5, 2017) (in insurance lawsuit, separate breach of fiduciary claim failed as a matter of law where no facts alleged the existence of a special duty). Pinkerton's breach of fiduciary duty claim is DISMISSED.

### E. Conversion Claim

In Ohio, conversion is defined as the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding from his possession under a claim inconsistent with his rights." *See Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 456 (Ohio 1976), *rev'd on other grounds by* 433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977).

---

[4] Pinkerton alleges that "both parties recognized [d]efendants' superior knowledge, as well as the special confidence and trust [p]laintiff reposed in the integrity and fidelity of [d]efendants[.]" (Compl. ¶ 77.) Yet, the only factual allegations she offers in furtherance of this conclusion are that GEICO was a "sophisticated insurance corporation" that she perceived as being in a position of superior influence. (*Id.* ¶¶ 10, 77.) "The fact that one party possesses more expertise concerning the matter under negotiation is insufficient in itself to establish a special relationship." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 739 (S.D. Ohio 2009).

"A claim of conversion must be based on the taking of identifiable personal property." *Beavers v. PNC Bank, Nat'l Ass'n*, No. 99773, 2013 WL 6408727, at *6 (Ohio Ct. App. Dec. 5, 2013). Conversion of money occurs only when the money is specifically earmarked, or capable of identification such as "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered[.]" *Haul Transport of VA, Inc. v. Morgan*, No. CA 14859, 1995 WL 328995, at *4 (Ohio Ct. App. June 2, 1995) (quotation marks omitted).

Here, Pinkerton does not allege that the money she paid to GEICO was identifiable, or that GEICO is obligated to return the specific money (i.e. specific bills) to her. Rather, she merely claims that she has been damaged by paying premiums for virtually worthless insurance coverage. Pinkerton has failed to state a claim for conversion, and GEICO's motion to dismiss this claim is GRANTED.[5]

### F. Unjust Enrichment Claim

In Count 6, Pinkerton purports to bring an unjust enrichment claim, asserting that she conferred a benefit on defendants in the form of a premium for UIM coverage for which defendants were unjustly enriched at her expense. (Compl. ¶¶ 91–94.) "'Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates *in the absence of an express contract or a contract implied in fact* to prevent a party from retaining money or benefits that in justice and equity belong to another.'" *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Beatley v. Beatley*, 828 N.E.2d 180, 192–93 (Ohio Ct. App. 2005)). "Thus, Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-

---

[5] Dismissal of Pinkerton's conversion claim would also be appropriate because she has failed to identify the breach of a duty separate and apart from the duty created by the contract. *See DeNune v. Consol. Capital of N. Am.*, *Inc.*, 288 F. Supp. 2d 844, 853–54 (N.D. Ohio 2003).

contract when an express contract covers the same subject." *Wuliger*, 567 F.3d at 799 (quotation marks omitted).

In this case, no party disputes the existence of the underlying insurance contract governing the issues in this case. Because there is no question that an express written contract exists between Pinkerton and defendants covering the disputed UIM coverage, Ohio law precludes a claim for unjust enrichment. *See, e.g., Gallo v. Westfield Nat'l Ins. Co*., No. 91893, 2009 WL 625522, at *3 (Ohio Ct. App. Mar. 12, 2009) (upholding dismissal of unjust enrichment claim in litigation challenging non-payment of certain expenses under automobile insurance policy). GEICO's motion to dismiss Pinkerton's unjust enrichment claim is GRANTED.

### G. Breach of Contract Claim

This leaves Pinkerton's breach of contract claim. In Count 1, Pinkerton asserts that the UIM coverage sold by GEICO was void as a matter of law because it provided no coverage against an underinsured driver. (Compl. ¶¶ 47, 48.) Pinkerton further alleges that she was misled "into believing her UIM coverage provided her a benefit[,]" and that absent this misdirection, she never would have purchased the Policy. (*Id*. ¶ 49.)

GEICO raises a litany of arguments in support of dismissal of Pinkerton's contract claim—such as the fact that the claim is barred by the filed rate and voluntary payment doctrines—but the viability of this claim ultimately turns on whether the UIM coverage the Policy offers is illusory. Under Ohio law, "[a]n insurance provision is illusory [and therefore unenforceable] 'when it appears to grant a benefit to the insured, although in reality it does not.'" *Raudins v. Hobbs*, 104 N.E.3d 1040, 1056 (Ohio Ct. App. June 14, 2018) (quoting *Beaverdam*

*Contr. v. Erie Ins. Co.*, No. 1-08-17, 2008 WL 4378153, at *10 (Ohio Ct. App. Sept. 29, 2008)). Where there is some benefit to an insured, the provision is not illusory. *Collins v. Auto-Owners Ins. Co.*, 80 N.E.3d 542, 551 (Ohio Ct. App. 2017); *Raudins*, 104 N.E.3d at 1056; *see also State Auto Ins. Co. v. Golden*, 709 N.E.2d 529, 532 (Ohio Ct. App. 1998) ("When some benefit to the insured is evident from the face of the endorsement, the endorsement is not an illusory contract.") When considering the existence of benefits under a policy, a court applying Ohio law does not weigh the benefits against the cost. *See, e.g., Lakota v. Westfield Ins. Co.*, 724 N.E.2d 815, 818 (Ohio Ct. App. 1998) (rejecting the argument that "virtually worthless" coverage was illusory when the policy provided "some benefit"). A construction of an insurance policy that would render it illusory is disfavored. *See Collins*, 80 N.E.3d at 551; *Raudins*, 104 N.E.3d at 1056.

Applying this construct, the Court must determine whether the UIM coverage in the Policy provides "some benefit." GEICO argues that the Policy would provide for UIM coverage when an accident involving multiple victims reduces the amount an insured received from a tortfeasor to an amount below Ohio statutory liability limits. Pinkerton suggests that the Policy would not permit a payout under this scenario because the contract language defines an "underinsured driver by her *limits* and not what amount remains in the Policy after payment to other claimants." (GEICO Opp'n at 178, citing the Policy at 113, Conditions, ¶ 8.[6])

However, Pinkerton's argument fails to take into account the fact that the payment of claims for UIM coverage is governed by Ohio statutory law. Similar to language in the Policy,

---

[6] Under the Policy, Conditions, ¶ 8, an underinsured motor vehicle "means a motor vehicle on which the limits of coverage available for payment to the **insured** under all bodily injury liability bonds and insurance policies covering persons liable to the **insured** are less than the limits for the Underinsured Motorists Coverage at the time of the accident."

Ohio Rev. Code § 3937.18 provides, in relevant part, that "[t]he policy limits of the underinsured motorist coverage shall be reduced by those amounts *available for payment* under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Ohio Rev. Code § 3937.18(C) (emphasis added). The Ohio Supreme Court has rejected the argument, for purposes of UIM coverage, "that a limits-to-limits comparison controls, in situations involving multiple claimants. *Webb v. McCarty*, 871 N.E.2d 1164, 1165 (Ohio 2007) (citing, among authority, *Littrell v. Wigglesworth*, 746 N.E.2d 1077, 1085–86 (Ohio 2001)). Instead, the court has found that the "available for payment" language obligates an insurer to provide coverage in a scenario where the amount the insured would receive from the tortfeasor is less than the insured's policy limits. *See Motorists Mut. Ins. Co. v. Andrews*, 604 N.E.2d 142, 146 (Ohio 1992) (holding that "when determining whether a motorist is underinsured [under the meaning of (former) Ohio Rev. Code § 3937.12(A)(2)], the *amount actually available for payment* under the tortfeasors' policy must be compared with the insured's underinsured motorist coverage limits. If the amount *available for payment* is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage.") Such an interpretation provides for the payment of UIM coverage when multiple claimants reduce the proceeds available to any given victim. *See Webb*, 871 N.E.2d at 1165 ("Appellant argues that because Webb's [UIM] policy was for the same amount as McCarty's liability policy, there is no [UIM] coverage. We have rejected this argument, that a limits-to-limits comparison controls, in situations involving multiple claimants.")

GEICO also argues that the Policy would provide UIM coverage if Pinkerton was involved in an accident with a party from a state with lower coverage limits than Ohio. Pinkerton

16

concedes that states, such as Florida, have lower coverage limits. Courts around the country have recognized that UIM coverage with limits less than a home state's required liability coverage limits is not illusory when it could provide coverage for an accident caused by an out-of-state tortfeasor. *See, e.g., Vincent v. Safeco Ins. Co. of Am.*, 29 P.3d 943, 948 (Idaho 2001); *Meridian Mut. Ins. Co v. Ritchie*, 544 N.E.2d 488, 489–90 (Ind. 1989); *Harmon v. N.J. Auto. Full Ins. Underwriting Ass'n*, 633 A.2d 1033, 1035 (N.J. Super. 1993) (explaining that because New York permitted single coverage limit of $10,000, a New Jersey resident with $25,000 UIM coverage, the same as New Jersey minimum liability limit, could receive a benefit in an accident with a New York insured); *see also Friesz v. Farm & City Ins. Co.*, 619 N.W.2d 677, 681 (S.D. 2000) (discussing possible scenarios wherein UIM coverage would be available).

Pinkerton does not deny the Policy would permit UIM coverage under the latter of these two possibilities but argues that, at the level of coverage she has purchased, the likelihood that she could assert a UIM claim under GEICO's second scenario is slight. (GEICO Opp'n at 179–80 [calling it an "exceedingly rare" situation].) "The fact that, at minimum levels, the underinsured provision will rarely be used does nothing to render the coverage illusory." *Friesz*, 619 N.W.2d at 681; *see Lakota*, 724 N.E.2d at 818 (rejecting similar argument that benefit surviving an exclusion was "virtually worthless"); *Hallihan v. Progressive Direct Ins. Co.*, No. 3:15-CV-01068-NJR-SCW, 2016 WL 4617243, at *6 (S.D. Ill. Sept. 6, 2016) ("That an insured chooses to purchase the minimum UIM coverage does not make it illusory; the 'freedom of contract includes the freedom to make a bad bargain.'") (quoting *SAMS Hotel Grp., LLC v. Environs, Inc.*, 716 F.3d 432, 438 (7th Cir. 2013)). Here, it is evident from the face of the Policy that the provision providing for UIM coverage offers at least "some benefit" to the insured.

Therefore, the Policy is not illusory, and GEICO's request to dismiss this final claim is GRANTED.

IV. **CONCLUSION**

For the foregoing reasons, GEICO's motion to dismiss is GRANTED, and this action is DISMISSED. Therefore, Government's motion to dismiss is DENIED as MOOT.

**IT IS SO ORDERED**.


Dated: March 4, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**